UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

| | | |
|---|---|---|
| JULIE IRVINE, GUARDIAN AD LITEM OF JUAN ALVAREZ, AUBREY ARCHAMBEAU, AND JOSEPH BAKER, AS NAMED PLAINTIFFS ON BEHALF OF A CLASS, | : | CIV. 21-4224 |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |
| JEREMY JOHNSON, ADMINISTRATOR, SOUTH DAKOTA HUMAN SERVICES CENTER, SUED IN HIS OFFICIAL CAPACITY, and MATT ALTHOFF, SECRETARY OF THE SOUTH DAKOTA DEPARTMENT OF SOCIAL SERVICES, SUED IN HIS OFFICAL CAPACITY, | : | |
| | : | |
| | : | |
| Defendants. | | |

o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o-o

   Plaintiffs Juan Alvarez, Aubrey Archambeau, and Joseph Baker were each declared incompetent to stand trial and ordered committed to a State-run facility that offers services designed to restore criminal defendants to competency.  The Plaintiffs assert that by failing to promptly effect their transfer to such a facility, and by continuing to hold them in jail while

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

awaiting that transfer, the State[1] has violated substantive rights afforded to them by the Due

Process Clause. "[U]ntil their unconstitutional confinement ends," they allege, they and the

members of their putative class will continue to suffer this constitutional injury. (Doc. 43, at 3

(quoting Doc. 27, at 4).) In its opening brief, the State identified three reasons why it is entitled

to summary judgment on the Plaintiffs' claim: First, a claim challenging the duration of one's

confinement falls within the exclusive domain of habeas corpus, not 42 U.S.C. § 1983. Second,

the claim is barred by sovereign immunity. And, third, even after overlooking these threshold

defects, the material, undisputed facts show that the State is engaged in no constitutional

violation. The Plaintiffs' arguments in response are insufficient to defeat the State's motion.

## Argument

### 1.   The appropriate mechanism for challenging the alleged unconstitutionality of one's confinement is a petition for habeas corpus, not an action under § 1983.

The Plaintiffs brought their substantive due-process claim under 42 U.S.C. § 1983. But

§ 1983 is displaced to the extent it overlaps with the statutory regime governing writs of habeas

corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973). "[T]he essence of habeas

corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional

function of the writ is to secure release from illegal custody." *Id.* at 484. An individual held "in

state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'"

*Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (quoting *Preiser*, 411 U.S. at 489).

From the start, the Plaintiffs have made clear that they challenge the duration of their

confinement. Their complaint asserts that they have been "incarcerated for longer than allowed

by the due process clause," and will continue to suffer a constitutional injury "until their

---

[1] Where appropriate, this response uses "the State" as a shorthand to refer to the Defendants.

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

unconstitutional confinement ends." (Doc. 27, at 2-4.) The very essence of their objection is that they were required to "remain[] in jail," an environment that they argue by its very nature "harms mentally ill people." (*Id.*; Doc. 6, at 5.) They have consistently identified an "unnecessarily lengthy" or "excessive" confinement as the basis for their constitutional claim and sought "relief from illegal pretrial detention" as a remedy for that harm. (*See, e.g.*, Doc. 6, at 8, 22-23; Doc. 9, at 3; Doc. 39, at 15.) *See also Brown v. McCray*, 74 F. App'x 875, 876-77 (10th Cir. 2003) (unpublished per curiam) (concluding claim by pretrial detainee that he had been held for an "excessive" period belonged in habeas). They have, in other words, rested their claim on a straightforward, "common contention: that the period of time for which they and others are confined is unconstitutional." (Doc. 39, at 15.) What the Plaintiffs seek is an earlier end to their jailhouse confinement, and a claim that seeks to bring an end to one's confinement belongs in habeas.

In response to the State's motion, the Plaintiffs do not seriously contest anything the State says above. Instead, they take the position that their claim lies outside the "core" of habeas corpus because, as pretrial detainees, they have been neither convicted nor sentenced. In their view, habeas is the exclusive vehicle only for those whose claims "allege a flaw in, or challenge the validity of, their convictions or sentences." (Doc. 53, at 6.) However, habeas corpus and § 1983 occupy exclusive domains: Habeas is the sole appropriate vehicle for an attack on the fact or duration of one's custody, *see Adams v. Agniel*, 405 F.3d 643, 644 (8th Cir. 2005) (per curiam), and it is not the proper vehicle for attacking anything else. *See Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam). The necessary implication of the Plaintiffs' position is that a pretrial detainee—having not been convicted of or sentenced for a crime—can never seek habeas relief and may pursue constitutional challenges only by means of § 1983.

The Plaintiffs have not identified any court that has adopted this position.  Meanwhile, many courts, including the Eighth Circuit, have recognized that a state pretrial detainee may challenge his detention by filing a habeas petition.  *Palmer v. Clarke*, 961 F.2d 771, 774 (8th Cir. 1992).  More than that, federal courts from every corner of the country have concluded that a pretrial detainee challenging "the fact or duration of his confinement" *must* proceed in habeas.[2] This result should be unsurprising:  Section 2441 reaches all persons held "in custody in violation of the Constitution or laws or treaties of the United States," without requiring that this custody be pursuant to a court-issued judgment.  *Cush-El v. Burris*, No. 4:21-CV-768 SEP, 2021 WL 4305736, at *2 (E.D. Mo. Sept. 22, 2021) (quoting 28 U.SC. § 2241(c)(3)).  The Plaintiffs fall well within the "core" of that statute.  They are in state custody, and they allege that this custody violates the Constitution.  "Section 2241, by its terms, requires nothing more."  *Rasul v. Bush*, 542 U.S. 466, 483-84 (2004).  Indeed, pretrial detainees are perhaps "the quintessential habeas petitioners," precisely *because* they have been detained "before courts have determined their guilt."  *Samak v. Warden, FCC Coleman-Medium*, 766 F.3d 1271, 1291 (11th Cir. 2014) (Pryor, J., concurring).  Where, as here, a pretrial detainee challenges the fact or the duration of his confinement, his sole remedy lies in habeas, not § 1983.

---

[2] *See, e.g.*,  *Lammers v. Nebraska*, No. 7:21CV5009, 2022 WL 865485, at *2 (D. Neb. Mar. 23, 2022); *Rose v. Kitts*, No. 3:21-CV-567-JD-MGG, 2021 WL 3910769, at *1 (S.D. Ind. Sept. 21, 2021); *Gregory v. Pennsylvania*, No. 4:21-CV-00257, 2021 WL 2907900, at *3 (M.D. Pa. June 1, 2021); *Davis v. Woods*, No. 20-341-BAJ-EWD, 2021 WL 2660041, at *3 n.26 (M.D. La. May 28, 2021); *Bare v. N.Y.C. Police Dept.*, No. 19-CV-2352 (PKC) (SJB), 2019 WL 2717105, at *2 (E.D.N.Y. June 28, 2019); *Hambardzumyan v. McDonald*, No. CV 17-3408-MWF (PLA), 2017 WL 4990442, at *1 (C.D. Cal. Oct. 27, 2017); *Dent v. Snider*, No. CV408-144, 2009 WL 890582, at *1 n.1 (S.D. Ga. Apr. 1, 2009); *Thomas v. Kaczmarek*, No. 2:08-CV-11543, 2008 WL 1901252, at *1 (E.D. Mich. Apr. 8, 2008); *see also Adams v. Morris*, 90 F. App'x 856, 857-58 (6th Cir. 2004) (unpublished per curiam) (concluding that claim by pretrial detainee in which he "essentially assert[ed]" that he was "being illegally confined" belonged in habeas).

The Plaintiffs rely on the Supreme Court's recent decision in *Nance v. Ward*, 142 S. Ct. 2214 (2022).  In particular, they rely on the Court's statement that, in defining the "core" of habeas corpus, the Court has "focused" on whether a claim challenges the validity or necessarily implies the invalidity of a conviction or sentence.  *Id.* at 2221.  But this argument ignores the facts of the case.

In setting out the rule to apply, the *Nance* Court omitted any reference to the duration of the petitioner's confinement because that component of the test had no bearing on the case before it.  *Nance* involved an Eighth Amendment method-of-execution claim.  A death-row inmate sought to prevent Georgia's use of lethal injection and proposed an alternative of death by firing squad.  *Id.* at 2220.  The issue was whether, because Georgia law did not recognize the inmate's chosen method of execution, his claim "would necessarily imply the invalidity of his death sentence" if a court granted relief.  *Id.* at 2223 (citing *Nance*, 142 S. Ct. at 2223 (Barret, J., dissenting)) (alterations and internal quotations omitted).  The Court had no reason to be concerned that the inmate's method-of-execution claim would shorten his confinement or bring about speedier release.  Nothing more can plausibly be read into the Court's choice to "focus" on the inmate's sentence.  After *Nance*, as before, a pretrial detainee's challenge to "the fact or duration of his physical confinement," sits at "the heart of habeas corpus."  *See Presier*, 411 U.S. at 498.  The *Nance* Court did not rewrite the law of habeas corpus.

In passing, the Plaintiffs also assert that their challenge should not be viewed as implicating the duration of their confinement because the State has at hand "a simple alternative" to releasing the Plaintiffs:  more quickly moving them "into competency restoration."  (Doc. 53, at 6, 7-8.)  The alternative is not simple.  The State cannot create instant capacity at the Human Services Center ("HSC") or at alternative treatment venues without displacing someone else who

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

needs treatment or instituting fundamental changes that require raising or reallocating funds,

dedicating new spaces or repurposing spaces that otherwise might be used for patients outside

the competency-restoration program, and somehow finding and retaining enough staff trained to

handle competency restoration.[3]  Even putting these practical concerns to the side, however,

there are two problems with the Plaintiffs' position that they cannot surmount.

First, this argument would require a wholesale rewriting of the complaint.  The Plaintiffs

are the masters of their complaint, *Winfrey v. City of Forrest City*, 882 F.3d 757, 758 (8th Cir.

2018), and their complaint must be construed as a whole.  *Young America's Fdn. v. Kaler*, 14

F.4th 879, 889 & n.9 (8th Cir. 2021).  Here, the Plaintiffs exercised their drafting discretion and

opted to focus on the duration of their jailhouse custody.  The crux of their complaint is that they

and the members of their putative class have been "*incarcerated* for longer than allowed by the

due process clause." (Doc. 27, at 2-3, 4 (emphasis added).)  Their objection is not that the delay

before treatment was too long *per se*.  The Plaintiffs would have no qualms with awaiting

treatment on their own recognizance, rather than being "warehoused" in jail.  (*See id.* at 2.)  *Cf.*

*Srutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012) (refusing to recognize a due-process right to

restorative treatment).  Instead, they challenge their "unconstitutional confinement."  (Doc. 27, at

4.)  By pleading their case in this way, the Plaintiffs made clear that the sole "condition" they

would have this Court remedy is the too-long duration of their confinement.  The Plaintiffs

cannot now "inject a new angle to [their] complaint" at summary judgment.  *Winfrey*, 882 F.3d at

578-59.

---

[3] The Plaintiffs recognize these challenges only obliquely, with reference to the State's opening brief— "'we know we have a problem and we're trying to fix it,'" and "'we're trying' is not a defense." (Doc. 53 at 3, 5.)  But before the Court can order the remedy the Plaintiffs seek, the Court must first find a constitutional violation.  As argued throughout these pages, one does not exist based on existing precedent.

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

Second, even assuming the Plaintiffs could now reshape their claim, they would fare no better under the above analysis.  As several courts have observed, habeas is the exclusive means of demanding "what can be fairly described as a quantum change in the level of custody," as opposed to a mere change in "program or location or environment" within the same level of custody.  *Gonzales-Fuentes v. Molina*, 607 F.3d 864, 873 (1st Cir. 2010) (quoting *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991)).  And the move from a jail to a hospital or treatment facility—unlike, say, a transfer to another, equivalent detention facility, (*see* Doc. 53, at 7)—qualifies as a "quantum change" in the level of custody.  *Heath v. Hanks*, 433 F. Supp. 3d 221, 226 (D.N.H. 2019); *Garcia v. Spaulding*, 324 F. Supp. 3d 228, 234 (D. Mass. 2018).

Finally, the Plaintiffs suggest that because none of the decisions on which they rely in their Complaint and in support of their motion for summary judgment even "mentions an issue about habeas," this Court should infer that the State's argument lacks merit.  (Doc. 53, at 7.)  But it is axiomatic that a case not addressing an argument that was not before the court offers "absolutely no support" for rejecting the argument.  *United States v. Bruguier*, 735 F.3d 754, 762-63 (8th Cir. 2013).  Frankly, even were the axiom otherwise, none of the cited decisions is binding on this Court (*see* Doc. 43, at 14-21),[4] and their failure to discuss a potentially dispositive issue would be yet another reason not to follow them as unpersuasive.

**2.      The Plaintiffs are not entitled to relief against Johnson or Althoff, as, even assuming the Plaintiffs suffered a constitutional injury, Johnson and Althoff lack the requisite connection to the policy from which that injury stems.**

A State is immune from suit by its own citizens, and the Plaintiffs cannot avoid that immunity by suing public officials as mere stand-ins for the State itself.  *281 Care Committee v.*

---

[4] In addition to relying on nonbinding decisions, the Plaintiffs occasionally cite *Jackson v. Indiana*, 406 U.S. 715 (1972).  But even were *Jackson* on point (and it is not), *see infra*, it was not a § 1983 case.  The case reached the Supreme Court on direct appeal.  *Id.* at 719.

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

*Arneson*, 638 F.3d 621, 632 (8th Cir. 2011).  In limited circumstances, a plaintiff may seek

declaratory or injunctive relief against a public official acting in his or her official capacity.  But,

to do so, the plaintiff must have identified an official (1) who has "some connection with the

enforcement" of the challenged law or policy and (2) who has threatened to commence

proceedings pursuant to the law or policy.  *Ex parte Young*, 209 U.S. 123, 156-57 (1908).

Here, the Plaintiffs have not shown that the officials they sued have "some connection" to

the enforcement of the policy that the Plaintiffs allege is unconstitutional.  The Plaintiffs

emphasize that this "'connection' requirement cannot mean that [the] defendants have the power

to remedy the practice by themselves."  (Doc. 53, at 9.)  The State agrees.  But that is not the

flaw in the Plaintiffs' decision to sue Johnson and Althoff.  The problem is that neither official

has authority to execute or oversee the allegedly violative policy.  *See Balogh v. Lombardi*, 816

F.3d 536, 545-46 (8th Cir. 2016); *Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952,

960-61 (8th Cir. 2015).  In other words, neither official is responsible for "violating federal law."

*See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal quotations

omitted).

As the Plaintiffs observe, the purportedly unconstitutional "practice in question is class

members' '*incarcerat[ion]* for longer than allowed by the due process clause awaiting an attempt

to restore them to competency.'"  (Doc. 53, at 9 (quoting Doc. 27, at 2-3) (emphasis added)

(alteration in the original).)  But neither Johnson nor Althoff had a role in enforcing the

Plaintiffs' continued jailhouse incarceration.  Nor do they have any oversight role with respect to

county jails, generally.  The jails that house the Plaintiffs and the putative class members are the

creations of the counties in which they sit.  They fall under the purview of the local board of

county commissioners, not the Department of Social Services or HSC.  SDCL § 24-11-2.  *Ex*

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

*parte Young* demands that the officials sued possess the power to enforce the allegedly

unconstitutional policy, and Johnson and Althoff have no such authority here.

Later in their response, the Plaintiffs abandon their earlier framing of "[t]he 'practice' in

question," and reformulate the unconstitutional policy as the "excessive delay between a

competency restoration order and admission to a competency restoration program." (Doc. 53, at

13.) For several reasons, this new framing is inconsistent with the Plaintiffs' theory of the case.

First, as addressed above, the framing clashes with the Plaintiffs' complaint. Second, as

addressed in more detail below, the framing cannot be squared with *Jackson v. Indiana*, 406 U.S.

715 (1972), the case on which they chiefly rely. *Jackson* concerned unjustified confinement—in

the form of commitment—not a delay in receiving treatment. *See id.* at 719. Third, the

Plaintiffs' revised formulation runs headlong into Eighth Circuit precedent. The Plaintiffs have

conceded, as they must, that they have no "right to appropriate or effective or reasonable

treatment," or to "treatment that gives them a realistic opportunity to be cured and released."

*Strutton*, 668 F.3d at 557 (internal quotations omitted). (Doc. 53, 18-19.) By reframing the issue

as above, however, the Plaintiffs simultaneously (1) disclaim any right to restorative treatment

and (2) assert that a mere *delay* before receipt of restorative treatment is unconstitutional. Both

cannot be true. If the Plaintiffs have no right to treatment, they have no right to receive treatment

in a timely fashion.

Unable to trace their allegedly unconstitutional confinement to Johnson or Althoff, the

Plaintiffs shift their focus to the statutes governing HSC. They note, for example, that the

Department of Social Services has the responsibility to establish "appropriate acute,

intermediate, and long-term psychiatric units at [HSC]," and has the discretion to "establish other

special units as it may determine." SDCL § 27A-4-8. And they assert that the chief

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

administrator of HSC and the Department are together tasked with establishing capacity limits for treatment areas at the center. *Id.* § 27A-4-20. But the Plaintiffs brought a constitutional claim, not a statutory one. Regardless of whether the Defendants have lived up to their statutory duties, or exercised their discretion in the manner the Plaintiffs would prefer, these statutes do not render Johnson and Althoff responsible for enforcement of the alleged constitutional violation: "incarcerat[ion] for longer than allowed by the due process clause.'" (Doc. 53, at 9 (quoting Doc. 27, at 2-3) (alteration in the original).)

To be internally coherent, the Plaintiffs' claim must concern their continued jailhouse detention, not the State's alleged failures to provide treatment or to timely admit the Plaintiffs to a treatment facility. On that understanding, the appropriate targets of injunctive relief are the officials who enforced the Plaintiffs' continued detention. Because Johnson and Althoff are not these officials, they fall outside *Ex parte Young* and are shielded by sovereign immunity.

**3.      The State is entitled to summary judgment on the merits, as the Due Process Clause poses no barrier to the temporary, continued confinement of the Plaintiffs while awaiting transfer to a mental-health facility.**

The State is also entitled to summary judgment. The Plaintiffs style their claim as one concerning a violation of substantive due process. To support this claim, the Plaintiffs have relied on decisions in other jurisdictions holding, based on different legal theories, that a prolonged detention between an order of commitment and transfer to a treatment facility at some point becomes a constitutional violation. Generally, those cases have applied some combination of principles announced in three decisions of the U.S. Supreme Court: *Youngberg v. Romero*, 457 U.S. 307 (1982); *Bell v. Wolfish*, 441 U.S. 520 (1979); and *Jackson*. The Plaintiffs now disclaim any reliance on *Youngberg* or *Bell*, thereby waiving any argument that those standards

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

apply.  (Doc. 53, at 18-19.)  *See Stacher v. Univ. of Ark. at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009).

Notably, by disclaiming *Youngberg* and *Bell*, the Plaintiffs necessarily abandon substantial portions of the cases on which they rely.  *See, e.g.*, *Ore. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1121-22 (9th Cir. 2003) (resting its analysis primarily on *Youngberg* before looking to *Jackson* to "draw support" for its earlier conclusion).  In response, the Court should decline to follow these cases as poorly reasoned.  The cases contorting *Jackson* into a standard governing pretrial detention are similarly unpersuasive.  By its plain terms, *Jackson* has no bearing on the continued detention of pretrial detainees awaiting competency-restoration services.  Further, even if *Jackson* was applicable, the undisputed facts show that the State is not engaged in any constitutional violation.

In *Jackson*, the Supreme Court held that the Due Process Clause prohibits "indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial."  406 U.S. at 731.  According to the Court, the duration of commitment must "bear some reasonable relation to the purpose for which the individual is committed."  *Id.* at 738.  Where that purpose is to restore the defendant's capacity, the Constitution permits the defendant to remain committed only for as long as reasonably "necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future," and, after that point, for so long as can still "be justified by progress toward that goal."  *Id.* at 738-39.  "[A]n explicit Supreme Court holding is like a statute in that its plain language must be obeyed."  *Helseth v. Burch*, 258 F.3d 867, 870 (8th Cir. 2001).  The Plaintiffs recite a piece of the *Jackson* Court's holding.  (Doc. 53, at 14-15.)  But they then ignore critical portions of the Court's language, and, aside from

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

gesturing toward the nonbinding cases above, they make no effort to justify its application to the facts here.

By its own terms, *Jackson* concerns only "the nature and duration of *commitment*." (*Id.* at 14 (quoting *Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021)) (emphasis added).) "*Jackson* decided, in effect, that competency restoration services cannot go on indefinitely. No one here argues they do." *Ind. Prot. & Advoc. Servs. Comm'n v. Ind. Family & Soc. Servs. Admin.*, No. 1:22-cv-00906-JRS-TAB, 2022 WL 4468327, at *6 (S.D. Ind. Sept. 26, 2022).[5] Instead, at issue here is the time between an order for treatment and the transfer for the beginning of such treatment. This temporary measure—even if less temporary than the Plaintiffs would like—is not comparable to the prospect of a lifetime involuntary commitment. It may be that, at some point, the Plaintiffs' pretrial detention will have "drag[ged] on too long, but that is a question of speedy trial rights, not a question of 'indefinite commitment' by the State's mental health arm." *Id.* at *7. Nothing in *Jackson* suggests it should be extended to pretrial detention.

Even assuming the *Jackson* framework should be extended to encompass the wait time between an order of commitment and transfer to a mental-health facility, the principles of that decision have not been offended here. The rule in *Jackson* applies only if a person was "committed *solely* on account of his incapacity to proceed to trial." 406 U.S. at 738 (emphasis added). The Plaintiffs accuse the State of misperceiving the nature of their claim, which they

---

[5] The Plaintiffs criticize the State's reliance on *Indiana Protection & Advocacy* for three reasons, none of which is persuasive. First, they note that the decision was appealed. But that appeal has since been dismissed. No. 22-2744, 2023 WL 2710284 (7th Cir. Mar. 2, 2023). Second, they emphasize that the court was addressing a preliminary injunction and was "prepared to revisit" its analysis on a fuller record. 2022 WL 4468327, at *7. But the question it was prepared to "revisit" concerned the *Youngberg* analysis the Plaintiffs have disclaimed. *See id.* at *6. Finally, the Plaintiffs take out of context the court's statement that "there is some wait time that would be clearly too long." *Id.* at *7. The court had previously made clear that that was "a question of speedy trial rights," not due process. *Id.* The Plaintiffs brought no speedy-trial claim here.

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

now suggest depends on an "unreasonably lengthy delay" divorced from the fact of their confinement. (Doc. 53, at 17.)  In their view, "[s]cattered issues as to why a person was originally incarcerated . . . have nothing to do with this issue." (*Id.*)  But that argument is impossible to square with *Jackson*.  *Jackson* recognized that involuntary commitment in some cases might be justified "solely" on the basis of competency restoration.  The Court's holding was that if that "sole" justification fell away, it was unconstitutional to continue to confine the criminal defendant.  *See* 406 U.S. at 738-39; *Lakey v. Taylor*, 435 S.W.3d 309, 320 n.9 (Tex. Ct. App. 2014).  The Court nowhere suggested that it would be impermissible to continue to confine persons whom the State has other or additional bases to confine.

To evade this result, the Plaintiffs assert that because a detainee's criminal proceedings are suspended until he or she is declared competent to proceed, the State can claim no basis for detaining the person aside from restoration of competency.  This argument does not follow.  Consider an example:  Suppose an offender is arrested and charged with committing a violent offense.  After a hearing, the offender is denied bond because he "pose[s] a danger to any other person or to the community."  SDCL § 23A-43-2.  Later, he is found incompetent to stand trial.  At that point, it is true that the State may no longer proceed against him on "[t]he trial of the indictment or information."  *Id.* § 23A-10A-5.  But the State has not surrendered its other legitimate rationales for justifying the detainee's continued detention, including "preventing danger to the community."  *See United States v. Salerno*, 481 U.S. 739, 747 (1987).

A contrary holding would produce absurd incentives.  The Plaintiffs tacitly concede that there is *some* undefined waiting time before transfer that is constitutionally permissible.  (*See* Doc. 58, at 8.)  It cannot be that HSC must receive a detainee without first completing any administrative prerequisites or must have on hand enough space to treat all incompetent

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

detainees at once, regardless of fluctuations in population.  At the same time, there is no defined

period in which a detainee receiving treatment will be restored to competency; some detainees

may take longer than others (if, indeed, they can be restored at all).  Thus, some uncertainty

regarding bedspace is always unavoidable.  Given that uncertainty, if this Court were to adopt

the Plaintiffs' rule, the State would be incentivized to move detainees who are violent or who

pose a flight risk to the front of the line for treatment, ahead of comparatively docile detainees.

Unable to rest on alternative justifications for detention, the State otherwise would risk being

forced to release these dangerous or flight-prone offenders due to the happenstance of other

detainees' longer-than-expected recovery times.  The more sensible rule is also the rule that

easily can be squared with the Court's language in *Jackson*:  Where the State has interests aside

from competency restoration at stake, "what was a justifiable detention before the competency

hearing remains justifiable after."  *Ind. Prot. & Advoc.*, 2022 WL 4468327, at *7.

Here, the Plaintiffs have offered no evidence concerning the bases for their detention.

And the best evidence at the State's disposal—the Plaintiffs' criminal docket sheets—appears to

show that at least two of the Plaintiffs were confined *before* they were ordered committed.  Both

Alvarez and Archambeau were rearrested after violating their pretrial-release conditions, and

there is no record that they were released and again rearrested before the court declared them

incompetent.  (*See* Doc. 5-1, Doc. 5-3; *see also* Doc. 45, ¶¶ 35-37, 49-51; Doc. 55, ¶¶ 35-37, 49-

51.)  (Indeed, in Alvarez's case, the arrest warrant was returned on August 26, 2021, the same

day he was ordered committed.  (Doc. 5-1, at 3, 7, 9-10; Doc. 41-1.))  Meanwhile, the record

shows that other detainees bonded out of jail without reattaining capacity, which would only be

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

possible if they were detained on some basis other than incapacity. (*See* Ex. 9.) [6]  In response,

the Plaintiffs offer only general statements from Sheriff Milstead that jails experience "a really

high turnover of inmates" and that some inmates may be booked multiple times. (Doc. 53, at

17.)  That may be true.  But it says nothing about the bases on which *the Plaintiffs* were detained

after their most recent arrest.  On that point, the Plaintiffs have submitted no "evidentiary

materials of specific facts showing the presence of a genuine issue for trial."  *Bedford v. Doe*,

880 F.3d 993, 997 (8th Cir. 2018) (internal quotation omitted).  Even if *Jackson* applies to

pretrial detention that is based "solely" on incapacity, the Plaintiffs have presented no evidence

from which a jury could find that the sole basis for their detentions was lack of capacity.

In addition, *Jackson* instructs that a person "committed solely on account of his

incapacity" can be committed for so long as the continued commitment can be justified by

"progress toward [the] goal" of reattaining capacity.  406 U.S. at 738-39.  This is true even if the

progress shown is gradual or if ultimate restoration remains uncertain.  *Jackson* requires only

that there be a "substantial probability" of restoration "in the foreseeable future."  *Id.* at 738.

Here, the undisputed evidence shows that the Plaintiffs were positioned to make cognitive gains.

The evidence shows that, in the Minnehaha County Jail, a detainee receives treatment (including

mental-health treatment) from trained providers, (*see* Ex. 12, at 6-7; Ex. 13, at 10, 15); has access

to and will be encouraged to take medications, (*see* Ex. 12, at 7-8); and will not be permitted to

exacerbate his or her mental-health conditions through drug or alcohol abuse.  (*See id.*)  For

many detainees, jail offers a relatively stable environment in which to undergo treatment.

---

[6] Numbered exhibits refer to the exhibits attached to counsel's affidavit in support of the State's
motion for summary judgment.

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

The Plaintiffs do not challenge any of this evidence.  Instead, they cite factual findings made by other courts purportedly showing that people held in jail "endure substantial unnecessary suffering."  (Doc. 53, at 18.)  But those findings were made by different courts evaluating different factual records.  They are of no consequence here.  All that matters is that the record before this Court does not support the Plaintiffs' claims.  The Plaintiffs also briefly dispute the State's premise:  Progress toward competency, they suggest, cannot justify continued detention.  (*See* Doc. 53, at 17-18; Doc. 58, at 3-4.)  But the Plaintiffs offer no authority for this proposition.  And *Jackson*—the only binding decision on which they rely—establishes otherwise.  If, as here, it was "substantially probable" that a detainee will attain capacity, and the detainee is making modest progress toward capacity while detained, *Jackson* does not preclude the State from continuing that detention.  406 U.S. at 738-39.

## Conclusion

The State respectfully requests that the Court grant its motion for summary judgment. The Court should do so without reaching the merits of the Plaintiffs' claim.  The Plaintiffs have failed to pursue their claim via the sole appropriate vehicle—a petition for writ of habeas corpus—and their claim is barred by sovereign immunity.  Alternatively, the State is entitled to summary judgment on the merits, as it has not violated any substantive due-process rights.

Case Number: CIV. 21-4224
Defendants' Reply in Support of Their Motion for Summary Judgment

Dated this 17th day of April, 2023.

WOODS, FULLER, SHULTZ & SMITH P.C.

By _/s/ James E. Moore_
James E. Moore
P.O. Box 5027
300 South Phillips Avenue, Suite 300
Sioux Falls, SD 57117-5027
Phone (605) 336-3890
Fax (605) 339-3357
Email:  James.Moore@woodsfuller.com

Clifton E. Katz
South Dakota Attorney General's Office
1302 E. Hwy 14, Suite 1
Pierre, SD 57501
Phone (605) 773-3215
Fax (605) 773-4106
Email:  clifton.katz@state.sd.us

*Attorneys for Defendants*